UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANTHONY J. FOLINO,
PETER D. OLIVIERI,

                      Plaintiffs,                    **REPORT AND**
                                                  **RECOMMENDATION**

v.

THE TOWN OF NIAGARA, et al.                 07-CV-0407A(M)

                   Defendants.

_____

       This case was referred to me by Hon. Richard J. Arcara to conduct "all pre-trial

matters", including to "hear and report upon dispositive motions" (Dkt. #6).   Before me is the

motion of the remaining defendants (defendant  Michael J. Stachowski, P.C. having been

previously dismissed from the case (Dkt. # 29)) for summary judgment pursuant to Fed. R. Civ.

P. ("Rule") 56 (Dkt. #16).[1]  For the following reasons, I recommend that defendants' motion be

GRANTED in part and DENIED in part.

### BACKGROUND

       Plaintiffs commenced this action  *pro se* pursuant to 42 U.S.C. §1983, alleging

violations of their constitutional rights arising from their arrests on July 10, 2004 during a traffic

stop in the Town of Niagara by defendant  Christopher Soluri, a Town of Niagara Police Officer

(Dkt. #1, ¶19).  Plaintiffs allege that they were assaulted by defendant Soluri, along with

_____

[1]     I previously granted defendants' motion to amend their motion for summary judgment to
include a Notice to *Pro Se* Litigants Opposing Summary Judgment, and provided plaintiffs with an
opportunity to make further submissions in opposition to defendants' motion (Dkt. ##27, 28).  I also
previously granted plaintiffs' motion for leave to submit a sur-reply (Dkt. #43).

defendants Jeffrey Spears and Kelly Cloutier (Id., ¶¶36-38).  Plaintiffs were then transported to

police headquarters, where they were chained to a bench by Police Chief Harold Suitor (Id., ¶39).

Plaintiff Folino was charged with resisting arrest, obstructing governmental

administration, disorderly conduct, and two uniform traffic violations (Dkt. #16-1, Ex. 7, ¶5).

Plaintiff Olivieri was charged with assault in the third degree, resisting arrest, obstructing

governmental administration, and disorderly conduct (Id., ¶6).   Plaintiffs were arraigned before

defendant John Teixeira, Town of Niagara Justice, who set bail at $3500 cash or $7,000 property

for plaintiff Folino and $5,000 cash or $10,000 property for plaintiff Olivieri (Id., ¶42).  Plaintiffs

posted bail several hours later and were released (Id.).

Thereafter, plaintiffs retained Michael J. Stachowski, Esq., as their attorney (Id.,

¶43).  Plaintiffs' criminal prosecution continued before Justice Teixeria through February 2005,

when he recused himself after plaintiffs filed a complaint against him with the New York State

Commission on Judicial Conduct (Dkt. #16-1, Ex. 7,  ¶10). The case against plaintiffs was then

transferred to Lockport Town Justice Leonard Tilney (Dkt, #1, ¶45).

A probable cause hearing was conducted before Justice Tilney on November 1,

2005, at which plaintiffs were represented by Mr. Stachowski, who cross-examined defendant

Soluri (Dkt. #16-1, Ex. 8).  In a November 5, 2005 decision, Justice Tilney concluded that

defendant Soluri had probable cause to stop plaintiff Folino's vehicle (Dkt. #16-1, Ex. 9).  In a

section of the decision entitled "Dicta",  Justice Tilney expressed concern over the lack of

discovery produced to defendants:

> "Defense counsel has made numerous requests . . . for discovery in
> this matter . . . .  Officer Soluri has prepared incident report . . .
> which is clearly 'Rosario material'.  This report was never given to

-2-

defense counsel.  While the Court believes the assistant district attorney has made a good faith effort to provide the materials requested by the defense, he has been unable to do so.  What is of tremendous concern for this Court is the non delivery by the Town of Niagara Police of the incident report.  Whether through inexperience or otherwise, the non delivery of the incident report was to the potential detriment of the defendants . . . .   The Police's negligence of non disclosure or worse is unfortunately imputed to the People and their representative.  However, because this was a pretrial hearing and the Court immediately allowed defendant counsel time to review the incident report and an adequate cross-examination was had of Officer Soluri, the damage, if any, to the defense was slight.  The assistant district attorney was misled by his own police witness when he advised defense counsel that no police notes and/or reports existed.  The Rosario violation however is not so egregious as to reach due process constitutional issues" (Dkt. #16-1, Ex. 9).

Justice Tilney also ordered a hearing to determine whether defendants' joint representation by Mr. Stachowski should continue (Id.).  Before that hearing occurred, Mr. Stachowski withdrew as attorney for plaintiff Olivieri (who then retained Robert Perk, Esq.), but continued to represent plaintiff Folino (Dkt. #1, ¶49; Dkt. #32, Ex. A, ¶¶19-22).

Mr. Stachowski met with plaintiff Folino on January 23, 2007 to discuss a possible plea.  In a letter dated January 25, 2007, Mr. Stachowski recommended that plaintiff Folino accept the district attorney's offer of a guilty plea to one count of disorderly conduct in satisfaction of all outstanding charges  (Dkt. #32,  Ex. A).   Mr. Stachowski advised plaintiff Folino that "you certainly have a right to a jury trial and I am prepared to go forward, if that is what you want, but I believe that it would be a grave risk of misdemeanors if we were to go to trial" (Id.). In open court before Justice Tilney on January 26, 2006, each plaintiff pled guilty to one count of disorderly conduct (Dkt. #1, ¶49; Dkt. #16-1, Exs. 10 and 11).

Thereafter, plaintiffs moved *pro se* to have their judgments of conviction vacated on various grounds, including ineffective assistance of counsel, duress and fraud, and the government's <u>Rosario</u> violations (Dkt. #32, Ex. B). This motion was denied by Justice Tilney in a Decision and Order dated February 17, 2007 (<u>Id</u>.). Plaintiffs filed a notice of appeal from this Decision and Order with the Niagara County Court (Dkt. #45, Ex. C), but were advised by that court that there was no appeal as of right (<u>Id</u>.). There is no evidence in the record that plaintiffs sought or obtained leave to appeal.

Plaintiffs' complaint (Dkt. #1) asserts the following causes of action against the remaining defendants: (first) illegal seizure against defendant Soluri; (second) malicious prosecution against defendants Soluri and Spears; (third) excessive force against defendants Soluri, Spears, and Cloutier; (fourth) false imprisonment against defendants Soluri, Spears, Suitor, and Teixeria; (fifth) "excessive bail and bias and unfairness towards plaintiffs" against defendant Teixeira; and (sixth) negligent failure to adequately train, supervise, and control defendant police officers against defendants Town of Niagara and the Town of Niagara Police Department.

## DISCUSSION AND ANALYSIS

### A.   Summary Judgment Standard

The standard for summary judgment in this Circuit is well settled. "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party

seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.  Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party."  Ford v. Reynolds, 316 F. 3d 351, 354 (2d Cir. 2003).  "The analysis conducted by the Court on a Rule 56 motion for summary judgment is the same regardless of whether it is made *prior to*, during, or after discovery."  Levine v. The Reader's Digest Association, Inc., 2007 WL 4241925, *5 (S.D.N.Y. 2007) (emphasis added).


**B.      Claims of False Arrest/Illegal Seizure, False Imprisonment, and Malicious Prosecution**

Defendants contend that these claims are barred by plaintiffs' guilty pleas (Dkt. #16, Memorandum of Law, Point II(A), (B)).  In response, plaintiffs argue that their guilty pleas cannot preclude their claims because the pleas were "involuntary due to ineffective assistance of counsel", and because of a "Brady violation due to the Police and Prosecution withholding evidence" (Dkt. #24, p. 5).

"To maintain an action under § 1983 for malicious prosecution, false arrest, or false imprisonment, a plaintiff must show that the criminal proceeding terminated in his favor." Papeskov v. Brown, 1998 WL 299892, *5 (S.D.N.Y. 1998), aff'd., 173 F.3d 845 (2d Cir. 1999). "As a general rule, a person who pleads guilty to . . . the crime for which he was arrested is barred from recovering damages pursuant to a § 1983 action based upon either a claim of malicious prosecution or a claim of false arrest. Of course, as with most rules, there is an

exception to this general principle. This exception applies to those situations in which a plaintiff

can establish that his conviction was obtained by fraud, perjury, conspiracy, or other undue

means (e.g., the misrepresentation, falsification or withholding of material evidence)". Williams

v. Markel, 1993 WL 498203, *5 (N.D.N.Y. 1993).  However, where the  plaintiff has already

challenged the validity of his  conviction in state court, that decision is entitled to preclusive

effect.  See Allen v. McCurry, 449 U.S. 90, 102 (1980) ("Collateral estoppel applies when §1983

plaintiffs attempt to relitigate in federal court issues decided against them in state criminal

proceedings"); Respass v. New York City Police Dep't, 852 F. Supp. 173, 177  (E.D.N.Y. 1994)

("plaintiff is estopped from attacking the plea because the state court's order denying his motion

to withdraw the plea is entitled to preclusive effect in this court").

   Because plaintiffs unsuccessfully  moved before Justice Tilney to have their pleas

vacated and failed to appeal his decision, their § 1983 claims of false arrest, malicious

prosecution, and  false imprisonment in connection to that case are barred.  See Papeskov, supra,

1998 WL 299892 at *5  ("A plea of guilty, even to a charge lesser than that for which the

plaintiff was arrested, bars a § 1983 action");  Respass, supra, 852 F. Supp. at 177.

   Moreover, prior to entering their guilty pleas, plaintiffs challenged whether there

was probable cause for their arrest at the November 1, 2005 hearing before Justice Tilney (Dkt.

#16-1, Ex. 8). Justice Tilney's November 5, 2005 determination that there was probable cause for

Officer Soluri to stop plaintiffs (Id. at Ex. 9) likewise precludes plaintiffs' claims of false arrest,

malicious prosecution, and  false imprisonment.  See Perlleshi v. County of Westchester, 2000

WL 554294, *4 (S.D.N.Y. 2000) (where a state court had conducted a suppression hearing and

determined that was probable cause to arrest the plaintiff, this finding precluded the plaintiff's false arrest and prosecution claims).

Therefore, I recommend that defendants be granted summary judgment dismissing these claims.

### C.    Claim of Excessive Force

Defendants concede that "a determination of whether excessive force was used in the course of an arrest is usually a[n] issue of fact" (Dkt. #16, Memorandum of Law, Point III). However, they argue that this claim is barred by the doctrine of judicial estoppel because "plaintiffs have in essence admitted that they resisted arrest based on their guilty plea to disorderly conduct, which satisfied all charges against them" (Dkt. #16, Memorandum of Law, p. 10).

"Judicial estoppel precludes a party from asserting the genuineness of a material fact that is contrary to a prior statement made by the party under oath in a judicial or quasijudicial proceeding." Perlleshi, supra, 2000 WL 554294 at *5. Defendants' reliance on Perlleshi is misplaced. In that case the court held that the plaintiff was estopped from claiming that the defendant police officer had used excessive force because this claim contradicted his earlier plea elocution in which he admitted to struggling with the police officer and pled guilty to resisting arrest. 2000 WL 554294 at *6. Here, by contrast, plaintiffs did *not* plead guilty to resisting arrest, and defendants have introduced no judicial or quasi-judicial statements from plaintiffs indicating that they resisted arrest.

-7-

Alternatively, defendants argue that their actions were objectively reasonable in light of plaintiffs' conduct (Dkt. #16, Memorandum of Law, p. 10). Where a claim of excessive force arises in the context of an arrest, "it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Graham v. Connor, 490 U.S. 386, 394 (1989). "To succeed on a Fourth Amendment excessive force claim, a plaintiff must show that the amount of force used was objectively unreasonable." Lowth v. Town of Cheektowaga, 82 F. 3d 563, 573 (2d Cir. 1996). The reasonableness of the force used is "judged from the perspective of a reasonable officer on the scene", and takes into account factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, supra, 490 U.S. at 396. The injuries suffered need not be permanent or severe to recover under an excessive force claim. See Robinson v. Via, 821 F. 2d 913, 924 (2d Cir. 1987).

Defendants rely on the affidavits of defendants Soluri and Spears, who state that plaintiff Folino "struggled a little while" as defendant Soluri handcuffed him and that plaintiff Oliveri stated that he "was not going easy" and attempted to strike the officers, which started a physical confrontation that caused the three men to fall to the ground, resulting in defendant Soluri sustaining a bruised knee and defendant Spears suffering a swollen lip and abrasions to his elbow (Dkt. #16-1, Exs. 3-4). Defendant Kellie Cloutier (now known as Kellie Treis) contends that by the time that she responded to the scene, plaintiffs were already detained in the police cars and that she never touched either plaintiff (Id., Ex. 5, ¶3).

-8-

In opposition to defendants' motion, plaintiffs rely on their joint affidavit in which they "affirm that the information in their complaint . . . [is] accurate and true based upon their personal knowledge" (Dkt. #23, ¶5). The complaint alleges that defendants Soluri and Spears "assaulted, battered and used excessive force upon [plaintiff] Olivieri by striking him in the face and body" and that defendants Soluri and Cloutier punched plaintiff Folino while he was handcuffed in the back of the police cruiser (Dkt. #1, ¶¶36, 38).[2]

These allegations are sufficient to create a genuine issue of material fact sufficient to deny summary judgment. Accepting one version of events over the other "would require [me] to weigh evidence, which is not allowed on summary judgment". Odom v. Dixion, 2008 WL 466255, *19 (W.D.N.Y. 2008) (Foschio, M.J.).  Accordingly,  I recommend that this portion of defendants' motion be denied.


**D.     Claims against the Town of Niagara and Official Capacity Claims**

Defendants argue that plaintiffs' official capacity claims and claim against the Town of Niagara should be dismissed because the single incident alleged by plaintiffs is insufficient to establish a municipal custom or policy (Dkt. #16, Memorandum of Law, Points IV, V). In response, plaintiffs argue that defendant Suitor, the Town of Niagara Police Chief, is a supervisory official who directly participated in the violations, who trains and supervises

---

[2]     Plaintiffs also rely on an investigative report from a private investigator who interviewed an individual that witnessed the arrest (Dkt. #23, Ex. A; Dkt. #45, Ex. D). However, this unsworn report and its hearsay content is inadmissible. See Crowley v. L.L. Bean, Inc., 303 F. 3d 387, 410 (1st Cir. 2002) (holding that various witness statements contained in an investigative report were hearsay and inadmissible evidence).   Even if it were in admissible form, it sheds little light on the subject events insofar as the witness "could not see exactly what physical activity took place" (Dkt. #23, Ex. A, p. 8). Likewise, plaintiffs also rely on Olivieri's uncertifed medical records from his emergency room visit on July 11, 2004 (Dkt. 23, Ex. B), which are not in admissible form and will therefore be disregarded.

subordinates,  and who has adopted customs which violate plaintiffs' rights under the

Constitution (Dkt. #24, p. 7).

"A municipality is a 'person' to whom § 1983 applies." Rochez v. Mittleton, 839

F. Supp. 1075, 1078 (S.D.N.Y. 1993).[3]  However, a municipality may not be sued under §1983

unless the challenged action of a municipal employee was performed pursuant to a municipal

custom or policy.  See Monell v. Department of Social Services of the City of New York, 436

U.S. 658, 691 (1978).  A municipality cannot be held liable under §1983 for the conduct of its

employees based on a theory of respondeat superior.  Id.

To hold a municipality liable under §1983, a plaintiff  must "plead and prove

three elements:  (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3)

a denial of a constitutional right".  Batista v. Rodriguez, 702 F. 2d 393, 397 (2d Cir. 1983);

Vippolis v. Village of Haverstraw, 768 F. 2d 40, 44 (2d Cir. 1985), cert. denied, 480 U.S. 916

(1987).  In order to prove the existence of a custom or policy, plaintiff must present evidence of

either a formal policy which is officially endorsed by the municipality, or a practice so persistent

and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of

policy-making officials.  Monell, supra, 436 U.S. at 690-91.  A custom or policy may also be

established if  the challenged conduct was engaged in by governmental officials responsible for

establishing municipal policies.  See Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84

(1986); Annis v. County of Westchester, 136 F. 3d 239, 248 (2d Cir. 1998).  Furthermore, "the

---

[3]       "Claims against individual employees of municipalities in their official capacities are tantamount to claims against the municipality itself". Humphrey v. Onondaga County Dept. of Social Services, 2007 WL 983310, *2 (N.D.N.Y. 2007); Kendricks v. Erie County Medical Center, 2005 WL 3059086, *6, n. 7 (W.D.N.Y. 2005)(Scott, MJ).

inference that a policy existed may . . . be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." <u>Ricciuti v. N.Y.C. Transit Authority</u>, 941 F. 2d 119, 123 (2d Cir. 1991).  However, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."  <u>Houghton v. Cardone</u>, 295 F. Supp. 2d 268, 279 (W.D.N.Y. 2003) (Larimer, J.).

Here, plaintiffs' complaint alleges that "as a proximate result of defendant Town and Police Department [*sic*] failure to provide adequate training, supervision, and control of defendant police officers, plaintiffs have sustained permanent injuries . . . both physically and mentally . . . .  Defendant Town and Police Department failures constitute a willful and wanton indifference and deliberate disregard for human life and the rights of private citizens, including Plaintiffs" (Dkt. #1, ¶92).

As previously discussed, plaintiffs' only remaining constitutional claim is their Fourth Amendment "excessive force" claim. Thus, this is the only claim upon which plaintiffs can establish municipal liability.  <u>See</u> <u>Clayton v. City of Poughkeepsie</u>, 2007 WL 2154196, *6 (S.D.N.Y. 2007) ("Based on this Decision and Order, Plaintiff no longer has a constitutional claim regarding allegedly unreasonable searches and seizures; as such, Plaintiff cannot maintain a claim for municipal liability as it pertains to any alleged policies or procedures surrounding searches and seizures.").  Even assuming that defendant Suitor could be considered an employee with policymaking authority for the Town, there is no claim in plaintiffs' complaint that he exercised excessive force.  Defendant Suitor's "only contact with the plaintiffs was after their arrest" (Dkt. #16-1, Ex. 6, ¶4). The only allegation against defendant Suitor is that he unlawfully

-11-

detained plaintiffs by chaining them to a bench when they were brought to police headquarters following the alleged assault (Dkt. #1, ¶39).

Moreover, plaintiffs have offered no admissible evidence that defendant Suitor's conduct can be imputed to the Town. Although plaintiffs rely on various evidence of acts of excessive force by defendant Suitor, including their private investigator's report, which indicates that he spoke with an individual upon whom defendant Soluri exercised excessive force (Dkt. #23, Ex. A, pp. 3-4), this evidence is not in admissible form. See footnote 3, supra. Likewise, although plaintiffs contend that they "also plan to call as [sic] witness" another individual that was allegedly verbally assaulted by defendant Soluri at a traffic stop (Dkt. #24, p. 7), this unsubstantiated allegation does not constitute admissible evidence.

Plaintiffs rely upon a November 23, 1988 counseling memorandum issued to defendant Suitor by the City of Boca Raton Police Department, his then employer, for use of physical force that did not conform with that department's policies (Dkt. #23, Ex. C). Not only is that document not in admissible form, but defendant Suitor's actions while employed by the Boca Raton Police Department have no bearing on the policies or customs of the Town of Niagara Police Department.

Plaintiffs also cite Suitor v. Keller, 256 A.D. 2d 1140, 684 N.Y.S. 2d 454 (4th Dep't 1998), wherein the court granted defendant Suitor's Article 78 petition seeking to vacate his termination from employment as a Town of Niagara Police Officer, concluding that suspension without pay and benefits for 18 months, in lieu of termination, was appropriate. While plaintiffs make allegations concerning the misconduct that resulted in defendant Suitor's termination (Dkt. #24, p. 6), they have offered no admissible evidence to support these claims.

As to the excessive force claims alleged against defendant Soluri, Spears and Cloutier - all employees below the policymaking level - plaintiffs have not demonstrated that the alleged violation of their constitutional rights resulted from a municipal custom or policy or the Town's failure to train its police officers. See Pierce v. Chautauqua County, 2007 WL 2902954, *9 (W.D.N.Y. 2007) (Curtin, J.) (granting the defendants' motion to dismiss where the complaint alleged that the municipality had failed to train its police officers, but relied solely on the events surrounding the subject arrest). Accordingly, I recommend this aspect of defendants' motion be granted.

E.      **Claims against the Town of Niagara Police Department and Niagara Town Court**

Defendants argue that defendants Town of Niagara Police Department and the Niagara Town Court are not separate entities subject to suit (Dkt. #16, Memorandum of Law, Point VI). Plaintiffs do not contest this argument. Therefore, I recommend granting this aspect of defendants' motion. See Pierce, supra, 2007 WL 2902954, *3 (W.D.N.Y. 2007) ("It is well settled that, under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); Latona v. Chautauqua County Jail, 2004 WL 2457797, *3 (W.D.N.Y. 2004) (Scott, MJ) ("In New York, departments like the [Chautauqua County Jail], which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the municipality and cannot be sued").

**F.**     **Claims against Justice Teixeira**

Defendants argue that plaintiffs' claims against Justice Teixeria are barred by absolute immunity (Dkt. #16, Memorandum of Law, Point VII). Plaintiffs contend that this aspect of defendants' motion should be denied pursuant to Rule 56(f) to allow them to conduct discovery (Dkt. #24, p. 8).

Rule 56(f) permits additional discovery where necessary to gather additional facts "essential to justify the party's opposition" to a summary judgment motion, if the movant "file[s] an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful." Gualandi v. Adams, 385 F.3d 236, 244-45 (2d Cir. 2004). Because neither plaintiffs' affidavit (Dkt. #23) nor their memorandum of law (Dkt. #24) address these factors, their Rule 56(f) request should be denied.

Even accepting as true plaintiffs' allegations that Justice Teixeria was "hostile and bias[ed]" towards them (Dkt. #1, ¶41), these allegations are insufficient to sustain a cause of action against him. "Judges enjoy absolute immunity from personal liability for acts committed within their judicial jurisdiction." Young v. Selsky, 41 F.3d 47, 51 (2d Cir. 1994), cert. denied, 514 U.S. 1102 (1995). "Judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. " Mireles v. Waco, 502 U.S. 9, 11 (1991). Instead, a judge is subject to liability if his actions were not taken in his or her judicial capacity, or "taken in the complete absence of all jurisdiction." Id. at 11-12.

Since it is undisputed that Justice Teixeira was acting at all times in his capacity as the Town Justice following plaintiffs' arrest, plaintiffs' claims are foreclosed by the doctrine of absolute immunity. Therefore, I recommend that this aspect of defendants' motion be granted.

G.      **Plaintiffs' Reference to the Town of Lockport, Lockport Town Court, and Town Justice Leonard Tilney as Additional Defendants**

The caption of plaintiffs' opposing affidavit (Dkt. #23) lists the Town of Lockport, Lockport Town Court and Town Justice Leonard G. Tilney as additional defendants in this action. However, they were not originally named as defendants in the complaint, and the deadline for moving to add additional parties expired on November 15, 2007 (Dkt. #14, ¶5). Therefore, they are not defendants in this action.

## CONCLUSION

For these reasons, I recommend that defendants' motion for summary judgment (Dkt. #16) be GRANTED in part and DENIED in part. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Rule 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge

in the first instance.  See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.  Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED:       June 11, 2008

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge